UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Nick Wesenberg, Derivatively on
behalf of Federated Department Stores,
Inc.

Civ. File No. 02-527 (PAM/RLE)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

James M. Zimmerman, et al.,

Defendants,

and

Federated Department Stores, Inc., a
Delaware corporation,

Nominal Defendant.

---

This matter is before the Court on a variety of Motions by both parties. Because the Court denies Plaintiff's Motion to Remand and grants Defendants' Motion to Dismiss for Failure to Make a Demand, it need not consider the balance of the Motions.[1]

# BACKGROUND

For the purposes of these Motions, it is not necessary to recount in detail the complex factual backdrop to this case. It is enough to note that this case arises from a derivative suit

---

[1] Accordingly, the Court dismisses as moot Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or to Transfer, and Plaintiff's Motion to Stay Consideration of Defendants' Motion to Dismiss Pending a Ruling on Plaintiff's Motion to Remand. Plaintiff has withdrawn his Motion for a Preliminary Injunction.

JUN 2 4 2002
FILED_____
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD____JUN 2 4 2002
DEPUTY CLERK_____

filed by Plaintiff Nick Wesenberg against Defendant Federated Department Stores, Inc. ("Federated") and its board of directors. Essentially, Wesenberg is challenging Federated's decision to liquidate the assets of its subsidiary Fingerhut Companies, Inc. ("Fingerhut") rather than sell it as a going concern. According to Wesenberg, Defendants so badly mismanaged Fingerhut that they want sell it through liquidation to obscure the proceeds of the sale so that their mismanagement will not be apparent. In other words, Wesenberg claims that Defendants have conspired to sell Fingerhut in such a way that the general public will not discover that they made an initial mistake in purchasing Fingerhut for $1.7 billion and then made ongoing mistakes in managing Fingerhut. Wesenberg seeks to have the Court enjoin Federated from liquidating Fingerhut and force Federated to attempt sell it as a going concern.[2] Additionally, Wesenberg seeks to have the Court order an independent evaluation of the true value of Fingerhut.

---

[2] It is worth noting that in his withdrawal of the preliminary injunction Motion, Wesenberg may have conceded that there is no justiciable case or controversy in this matter. The Complaint is essentially predicated on the notion that Defendants have failed to adequately maximize shareholder value. Wesenberg concedes that "in a move designed to maximize shareholder value . . . Federated has called for bids on Fingerhut's assets from at least 40 different companies." (Pl.'s Notice of Withdrawal of Prelim. Inj. Mot. at 1.) Wesenberg goes on to state that "[a]lthough Defendants' decision . . . comes at the eleventh hour and should have been made many months ago, it still essentially moots Plaintiff's request for injunctive relief." (Id.) It is unclear, in light of this concession, what claims remain for the Court's consideration. See Missouri ex rel. Nixon v. Craig, 163 F.3d 482, 484 (8th Cir. 1998) ("[F]ederal courts may adjudicate only actual, ongoing cases or controversies.") (citing Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990)). Nevertheless, because the Complaint also generally alleges that Defendants breached fiduciary duties, the Court will consider and rule on the pending Motions.

2

## DISCUSSION

### A. Plaintiff's Motion to Remand

Wesenberg argues that the removal of this case from state court was inappropriate. Under 28 U.S.C. § 1441(a) "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by . . . the defendants to the district court . . . for the district and division embracing the place where such action is pending." "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). Diversity under section 1332 must be complete. See Carden v. Arkoma Assocs., 494 U.S. 185, 187 (1990) (citing Strawbridge v. Curtiss, 7 U.S. 267, 267 (1806)). For the purposes of diversity jurisdiction, a corporation is deemed to be "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c).

In this case, Wesenberg asserts that there is not complete diversity between the parties. Wesenberg is a citizen of Minnesota and three of the Defendants (members of Figerhut's board of directors) are citizens of Minnesota as is Defendant Fingerhut. Defendants persuasively argue, however, that Wesenberg has joined Fingerhut and its board of directors merely to deprive the Court of jurisdiction over this case.

Joinder of a non-diverse defendant "is fraudulent and removal is proper when there exists no reasonable basis in fact and law supporting a claim against the resident defendants."

3

Wiles v. Capitol Indem. Corp., 280 F.3d 868, 871 (8th Cir. 2002); see also Masephol v. Am. Tobacco Co., Inc., 974 F. Supp. 1245, 1250 (D. Minn. 1997) (stating that joinder is also fraudulent "if the plaintiff has no real intention in good faith to prosecute the action against the defendant or seek a joint judgment"). Courts look to the face of the compliant to determine if a defendant has been fraudulently joined. Anderson v. Home Ins. Co., 724 F.2d 82, 84 (8th Cir. 1983).

The Court agrees that Fingerhut and its board were joined only to frustrate subject matter jurisdiction. The Complaint alleges two counts: (1) breach of fiduciary duties; and (2) waste of corporate assets. As Defendants point out, Wesenberg does not allege that Fingerhut breached any fiduciary duties or wasted any corporate assets. Because Fingerhut cannot be held liable for conduct committed by others, there is no reasonable basis in fact or law supporting Wesenberg's claims against Fingerhut. See, e.g., Arnold v. Soc'y for Sav. Bancorp., Inc., 678 A.2d 533, 540 n.16 (Del. 1996) (stating that a "corporation itself is not liable for a breach of fiduciary duties by its directors") (citations omitted).

Similarly, all of the factual allegations in the Complaint relate to the action or inaction of Federated's board of directors rather than Fingerhut's. For instance, the Complaint asserts that "to discharge their duties, defendants were required to independently and effectively supervise and control Federated's executives and Federated's polices, practices, controls and financial affairs." (Compl. ¶ 25.) There is no allegation that the Fingerhut directors named as Defendants in this matter exercised any control or supervision over Federated's

4

executives, policies, or practices. The Complaint goes on to state that the "Individual Defendants," defined as including the three members of Fingerhut's board (see id. ¶ 24),[3] are being "sued individually in his or her respective capacity as an officer and/or director of Federated." (Id. ¶ 26.) The Complaint then conflates the "Individual Defendants" with the Federated board several times (see, e.g., id. ¶¶ 41, 32-35), clearly evidencing that the focus of Wesenberg's claims is the conduct of Federated's board of directors.

Even if Wesenberg's claims were aimed at Fingerhut's board, however, in order to maintain such a "double derivative" action, Wesenberg would need to make a demand on both the boards of Federated and Fingerhut or allege specific facts showing that such a demand was futile. See Ash v. McCall, 2000 WL 1370341, at *13 (Del. Ch. Sept. 15, 2000); Blasband v. Rales, 971 F.2d 1034, 1050 (3d Cir. 1992). Here, Wesenberg has failed to allege any facts excusing his failure to make a demand on Fingerhut's board. Accordingly, the Court finds that there is no reasonable basis articulated in the Complaint to support claims against Fingerhut or its board of directors.

Nevertheless, Wesenberg contends that 28 U.S.C. § 1441(b) prohibits removal in this case because Fingerhut and the three members of its board named as Defendants are citizens

---

[3] Although ¶ 24 of the Complaint states that "[t]he defendants named in ¶10(a)-(n) are . . . collectively referred to herein as the 'Individual Defendants,'" this is apparently a drafting error because ¶ 10 of the Complaint contains no subsections and refers only to Defendant James M. Zimmerman, Chairmen of the Board and CEO of Federated. Because there are fourteen individual defendants listed in ¶¶ 10-23 of the Complaint, the Court assumes for the purposes of this Motion that ¶ 24 should read that "the defendants named in ¶¶ 10-23 are collectively referred to herein as the 'Individual Defendants.'"

5

of this forum. Under § 1441(b), an action based on diversity jurisdiction may only be removed if "none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Because the Court finds that the Minnesota Defendants in this case were fraudulently joined, as opposed to being "properly joined," the limitation of § 1441(b) does not apply. Thus, the Court has diversity jurisdiction over this matter and removal of the case was appropriate. It is, therefore, unnecessary to consider Defendants' alternative argument that the Court also has federal question jurisdiction over this case.

**B.     Defendants' Motion to Dismiss for Failure to Make a Demand**

Essentially, Defendants assert that Wesenberg's claims must be dismissed because he failed to make a demand on Federated's board of directors before bringing this derivative action and has not alleged with particularity why the demand requirement should be excused as futile. It is important to note that the parties do not debate that Delaware law applies to this case, nor do they debate that Wesenberg failed to make a demand on Federated's board of directors before bringing this action. Accordingly, the only issue to resolve is whether Wesenberg's failure to make a demand should be excused.

Under Delaware law, a shareholder must satisfy a stringent pleading standard and allege particularized facts justifying any failure to make a demand. Brehm v. Eisner, 746 A.2d 244, 254 (Del. 2000); see also Fed. R. Civ. P. 23.1 ("In a derivative action brought by one or more shareholders . . .[t]he complaint shall also allege with particularity the efforts,

6

if any, made by the plaintiff to obtain the action . . . desire[d] from the directors . . . [or] the reasons for the plaintiff's failure" to make such efforts.). A demand is considered futile and may be excused only if the particularized facts alleged in the complaint create a reasonable doubt that: (1) the directors are disinterested and independent; or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. White v. Panic, 783 A.2d 543, 551 (Del. 2001); Aronson v. Lewis, 473 A.2d 805, 815 (Del. 1984).

Rather than alleging particularized facts to meet his burden in this case, Wesenberg attempts to subvert the heightened pleading requirement. To this end, he cites a number of cases from jurisdictions other than Delaware and a number of cases decided before Aronson. As Defendants point out, however, current Delaware law unequivocally sets a high bar for plaintiffs who wish to excuse their failure to make a demand. See Brehm, 746 A.2d at 254 (noting that the stringent requirement of factual particularity required to excuse failure to make a demand "differ[s] substantially from . . . permissive notice pleadings"). Delaware's pleading requirement is not merely a technical requirement; it is a substantive rule of law, Grimes v. Donald, 673 A.2d 1207, 1216 (Del. 1996), that promotes dispute resolution and reifies the fundamental precept that directors rather than shareholders manage the business and affairs of corporations. Aronson, 473 A.2d at 812; see also Brehm, 746 A.2d at 255 ("[T]he rule does not permit a stockholder to cause the corporation to expend money and resources in discovery and trial in the stockholder's quixotic pursuit of a purported corporate claim based solely on conclusions, opinions or speculation.").

To the extend that Wesenberg does allege facts that might support a finding of futility, these facts are insufficient as a matter of Delaware law to excuse demand. Wesenberg, for instance, claims that because Defendants participated in the allegedly nefarious conduct, they could be held personally liable and cannot be expected to bring an action against themselves. Wesenberg's "bootstrap allegations of futility based on claims of directorial participation in and liability for the wrongs alleged, coupled with a reluctance by directors to sue themselves, were laid to rest in Aronson." Pogostin v. Rice, 480 A.2d 619, 625 (Del. 1984). The court in Aronson explicitly pointed out that "the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors." Aronson, 473 A.2d at 815.

To succeed with such an argument, Wesenberg would need to show that there is a "substantial likelihood" that the Federated directors will have to pay damages to the company. Kohls v. Duthie, 791 A.2d 772, 779 (Del. Ch. 2000) (quoting Rales v. Blasband, 634 A.2d 927, 936 (Del. 1993)). This, Wesenberg fails to do. In paragraphs 31-39 of his Complaint, Wesenberg makes the bald allegation that Defendants overpaid for Fingerhut, then mismanaged it, and finally conspired to avoid liability by choosing to liquidate Fingerhut rather than sell it as a going concern. Wesenberg goes on to say that Defendants have failed to negotiate with potential buyers who would pay more for Fingerhut than Federated could make by liquidating it. Missing from these allegations, however, are any particulars. Nowhere does Wesenberg discuss or even mention what he supposes that

Defendants should have paid for Fingerhut in the first place. His allegations that there are potential buyers who would pay more for Fingerhut as a going concern than Federated could make by liquidating it are similarly spare. He names none of these buyers, provides no financial data to support his conclusion that Fingerhut is worth more as a going concern, and provides nothing but his accusation to show that Defendants have failed to negotiate with or solicit bids from potential buyers that are designed to maximize shareholder value. The Court "cannot conclude from the face of the [C]omplaint that this is a rare case where the circumstances are so egregious that there is a substantial likelihood of liability." In re Baxter Int'l, Inc. Shareholders Litig., 654 A.2d 1268,1271 (Del. Ch. 1995).

Wesenberg's claim that Federated's board otherwise lacks independence is also unavailing. Wesenberg merely argues that Federated's board is composed of people who have "entangling alliances, interests and dependencies, and therefore, [will] not able to and will not vigorously prosecute" this action. (Compl. ¶ 50.) This conclusory allegation is not supported by any particular facts. Considering that a majority of Federated's board of directors (eight out of eleven) are outside directors, and in the absence of any particularized showing otherwise, there is no reasonable doubt as to the disinterest of Federated's board.

Wesenberg also fails to satisfy his "heavy burden" of creating a reasonable doubt that the challenged actions or omissions of Federated's board were the product of a valid exercise of business judgment. White, 783 A.2d at 551. Indeed, rather than trying to satisfy his burden, he flagrantly misrepresents the law and, without citation to any Delaware case,

9

stands the deference afforded by the business judgment rule on its head. Wesenberg states that "the burden is on the directors to prove both the good faith of the transaction and its inherent fairness." (Pl.'s Opp'n Dismiss Mem. at 10.) Then, in an argument that's circularity is dizzying, Wesenberg states that when demand is excused, courts suspend deference to the director's business judgment. See Country Nat'l Bank v. Mayer, 788 F. Supp. 1136, 1145 (E.D. Cal. 1992).

Even if Mayer, a case applying California law and not containing a single cite to a Delaware case or discussing Delaware law, were applicable, it is of no assistance to Wesenberg. The very question before the Court is whether demand is excused. Under Delaware law, it is clear that a plaintiff may only establish futility and therefore excuse a demand by creating a reasonable doubt that either: (1) the directors are independent or disinterested for the purposes of responding to the demand; or (2) "the underlying transaction is protected by the business judgment rule." Brehm, 746 A.2d at 255. "These prongs are in the disjunctive." Id. at 256. As the Court has already held, Wesenberg has failed under the first prong to excuse demand. He must, therefore, adduce particular facts that create a reasonable doubt that the conduct of Federated's board is not protected by the business judgment rule. Wesenberg has failed to present any such facts. Accordingly, his claims must be dismissed.

This conclusion is not altered by Wesenberg's feeble contention that Defendants' opposition to this action demonstrates that a demand would have been futile. See Aronson,

10

473 A.2d at 810 ("[F]utility is gauged by the circumstances existing at the commencement of a derivative suit . . . [, which] disposes of plaintiff's argument that defendants' motion to dismiss established board hostility and futility of demand."); Kamen v. Kemper Fin. Servs., Inc., 939 F.2d 458, 462 (7th Cir. 1991) ("[N]o state treats the directors' failure to capitulate in the lawsuit as forfeiting the firm's entitlement to demand before the suit commences.").

## CONCLUSION

For the foregoing reasons and based on all the files, records, and proceedings herein, the Court finds that: (1) the non-diverse Minnesota Defendants in this case were fraudulently joined and, therefore, that removal was appropriate; and (2) Wesenberg has failed to excuse his failure to make a demand on Federated's board of directors. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Remand (Clerk Doc. No. 11) is **DENIED**;

2. Defendants' Motion to Dismiss for Failure to Make a Demand (Clerk Doc. No. 17) is **GRANTED**;

3. Defendants' Motion to Dismiss for Lack fo Personal Jurisdiction or to Transfer (Clerk Doc. No. 20) is **DENIED as moot**;

4. Plaintiff's Motion to Stay Consideration of Defendants' Motion to Dismiss Pending a Ruling on Plaintiff's Motion to Remand (Clerk Doc. No. 9) is **DENIED as moot**;

5. Plaintiff's Motion for a Preliminary Injunction (Clerk Doc. No. 33) is

**DENIED as withdrawn**; and

6. Plaintiff's Complaint (Clerk Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 24, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

*This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.*

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995